Argued November 7, affirmed December 12, 1962

# STATE OF OREGON *v.* McKENZIE

377 P. 2d 18

*Tom P. Price,* Portland, argued the cause and submitted the brief for appellant.

*Charles S. Evans,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Denecke, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Donald Andrew McKenzie, from a judgment of the circuit court which adjudged him guilty of the crime of burglary not in a dwelling (ORS 164.240) and imposed sentence of imprisonment. The entry of the judgment was preceded by the return of a verdict of guilty.

ORS 164.240 provides:

"Any person who breaks and enters any building within the curtilage of any dwelling house, but not forming a part thereof, or breaks and enters any building or part thereof, booth, tent, railroad car, vessel, boat or other structure or erection in which any property is kept and which is not a dwelling house, with intent to steal or to commit any felony therein, is guilty of burglary * * *."

Shortly before midnight of August 17, 1961, the Powellhurst Drug Store in Portland was burglarized. Among the stolen property was a small quantity of narcotic drugs. The following morning detectives Lowry and Johnson of the Multnomah County Sheriff's staff were sent to investigate the burglary and found that the burglar had gained entry through a hole cut in the roof of the structure near the rear of the store. They were informed by a Miss Debbie Daggett, a clerk in the store, that she had noticed a man loitering about the store the preceding day. The following excerpt from her testimony describes how that man aroused her suspicions:

"This young man came in, and he didn't know particularly what he wanted. He just wandered

around, and finally said he wanted to buy a particular size Band-aid. So I directed him to the Band-aid section, and so the pharmacist helped me for a while. We didn't have the right size Band-aids.

"I was in the position of the cash register when he talked to him, and when the pharmacist went back to finish the work he was doing, he looked at the ceiling and roof there in the back room, towards the end of the store.

\* \* \*

"Each time that I would go back to the cash register, he would look at the tooth brushes, and be very interested, and as he would look from the tooth brushes, he would look at the back of the store \* \* \*.

"From his mannerism, the pharmacist and myself at first thought he was intoxicated. However, at various times we were close enough to him, but we couldn't smell liquor or alcoholic beverage on his breath."

Miss Daggett testified that when the man left the store she observed him get into a "black Lincoln" automobile which was driven by a second man whose face she was unable to see. But she committed the numbers on the license plates of the "black Lincoln" to memory, and was able to divulge them to the officers. The latter traced them to the black Lincoln owned by the defendant.

From the information Miss Daggett gave Lowry and Johnson were able to discover where the defendant lived. When they arrived at his residence he was not home, but they obtained permission from his mother to search his room and picked up some clothing which is not relevant to the issues before us. Later that afternoon the officers discovered a black Lincoln sedan

bearing the license number which Miss Daggett had given them. It was parked at Southwest Tenth and Oak Streets. The officers stopped their car across the street and waited for approximately two hours until the defendant returned to his car. They approached him, identified themselves, disclosed the nature of their business, and invited him to their car to discuss the burglary. In this request he acquiesced. While he was sitting in their car, so both officers swore, the defendant confessed to his part in the crime and admitted that he had been assisted by a second man whose identity he refused to reveal. Lowry and Johnson both testified that the defendant showed them marks on his arms which he claimed resulted from the injection of narcotics into his blood stream. They also testified that when they later discovered "several vertical abrasions on his upper arms and on his back" he explained that they were inflicted when he lowered himself through the hole in the drug store's roof. At the trial, however, defendant denied that he had made any such admissions, and gave a different explanation for the abrasions on his body.

After the defendant had been placed under arrest, Officer Lowry went across the street to search the defendant's car. In its glove compartment he found two vials containing what appeared to him to be narcotics. Upon this appeal we are concerned only with the vial which at the trial became identified as "Exhibit 2A."

Defendant's first three assignments of error are as follows:

"It was prejudicial error for the Court to have received State's exhibit 2, for lack of proper identification by the officer first seizing the evidence."

638

"It was prejudicial error for the Court to have received State's Exhibit No. 2 for lack of evidence indicating delivery to another officer."

"It was prejudicial error for the Court to have an expert witness testify as to the contents of Exhibit 2 for the reasons of lack of proof of intermediate delivery and lack of proper labeling."

The "Exhibit No. 2" was actually marked "Exhibit 2A."

Each of the assignments of error depends upon a determination of whether the chain of possession of Exhibit 2A from officer Lowry to Mr. Lyle Hurt, a chemist who analyzed it, is complete. Defendant contends that it is not. The State, on the other hand, urges that it showed an unbroken chain of possession from Officer Lowry to Officer Johnson to Captain Auborn to Officer Tennant to Mr. Lyle Hurt, and that the latter personally initialed the vial, tested its contents, identified it at the trial, and testified as to its contents. We now proceed to trace the chain in order to determine whether it is complete.

Officer Lowry swore that he found the vial in the glove compartment of the defendant's car and took it to the car in which the defendant and Officer Johnson were waiting.

Officer Johnson testified:

"Q   Did you identify the objects he brought back from defendant's car?
"A   Yes, sir.
"Q   How did you identify them?
"A   I put my initials on them.
"Q   Where was that?
"A   When my partner brought them back to the car.  We just sat them down beside us, between us, and when we got to the office, we sat down at

Captain Auborn's desk, and I sat down at Captain Auborn's desk, and I sat down and initialed these with my initials.

*     *     *

"A  Yes, sir, these have my initials on them.

"Q  Did those come out of defendant's car?

"A  Yes, sir."

Captain Auborn, to whom the quoted testimony refers, testified that upon receiving the vial from Lowry and Johnson, he placed it in an envelope which he sealed and marked with his own handwriting. The envelope was produced at the trial. He identified it as the one which he sent to Mr. Hurt. He also gave the following testimony:

"Q  And what did you do with that?

"A  I left this envelope locked in my desk until the 9th day of November, when I gave it to Officer George Tennant to deliver to Lyle Hurt down at the Portland Police Department."

Officer Tennant, to whom Captain Auborn delivered the envelope, testified that he took the sealed envelope to Lyle Hurt at the request of Captain Auborn. He identified the envelope in which the vial had been placed as the one which he had delivered.

Mr. Hurt swore that Tennant brought the sealed envelope to him and that he (Hurt) dated and initialed it in his own handwriting. He testified that he opened the envelope and took therefrom Exhibit 2A, placing his initials upon it. He then performed some chemical tests to discover the nature of its contents. Both the envelope and the vial (Exhibit 2A) were identified by him at the trial.

■ Defendant claims that since Lowry was unable positively to identify Exhibit 2A as one of the objects

which he had removed from the glove compartment of defendant's car, the exhibit was not properly admitted in evidence. It will be noted, however, that Lowry testified that he took the objects which he removed from the glove compartment to the police car in which Johnson and the defendant were waiting. Johnson thereupon identified Exhibit 2A as one of the items which Lowry had brought with him. The item was, therefore, positively identified as one which Lowry had taken from the glove compartment. That Lowry himself did not make the entire identification is of no consequence.

■ Defendant also challenges the admission of Exhibit 2A on the ground that Lowry did not say that he handed the vial to Johnson. Therefore, he concludes, there is no evidence of delivery from the one to the other. But Johnson testified that Lowry placed the items which the latter obtained from the defendant's car onto the front seat of the sheriff's car between the two officers, and that he (Johnson) took them from there upon their arrival at the station. Clearly this is evidence of delivery from Lowry to Johnson. An explicit utterance to that effect was not essential to show such delivery.

■■ Further, the defendant complains that Exhibit 2A should have been excluded because Captain Auborn made no identifying mark on the vial itself and because Officer Tennant made no such mark on the sealed envelope before he delivered it to Mr. Hurt. The Captain testified that he placed the vial which Johnson had marked into an envelope which he sealed. He marked the envelope in his own handwriting. We fail to discern any material difference between the Captain's marking the vial which contained the narcotics and his marking the sealed envelope which contained

that vial. We do not understand the defendant to contend that the Captain should have marked each tablet which the vial contained. Nor is it of consequence that Officer Tennant did not make any identifying marks on the envelope. The envelope was not blank. It bore sufficient markings of various kinds to enable him to distinguish it from other envelopes of the same size and shape. He identified some of these marks in the process of identifying the envelope. His testimony that this was the envelope which he had delivered to Mr. Hurt was clearly admissible.

We are satisfied that the State has established a complete chain of evidence. It has traced the vial through each person who possessed it from the time it left defendant's glove compartment to the time its contents were analyzed by Mr. Hurt. There is no "missing link." Nothing which could be added would make the chain more complete than it now is. Additional testimony would be deemed cumulative. The vial was properly admitted in evidence and witness Hurt was properly allowed to testify as to its contents. Defendant's first and second assignments of error are without merit.

■ The third assignment of error is based on the court's denial of defendant's motion for a directed verdict of acquittal, or more properly speaking, of a judgment of acquittal. Defendant claims that the only evidence against him is the "alleged oral admissions made to the arresting officers." He urges that this is not sufficient evidence to sustain the charge and that therefore his motion for a directed verdict should have been granted.

■ In view of our finding that the vial containing the narcotic drugs was admissible in evidence, we must conclude that defendant's assumption that he is being

convicted solely upon his alleged admissions is erroneous. In making his contention, defendant has overlooked evidence in addition to these admissions and his possession of narcotics at the time of his arrest. He was the owner of a "black Lincoln" sedan which was observed under suspicious circumstances in the vicinity of the drug store the day before the burglary. He had abrasions on his body which could easily have been caused by squeezing through the small hole which had been cut in the drug store's roof. There was testimony that tools were found in his car at the time of his arrest which were peculiarly adapted to the cutting of holes in roofs. Narcotic drugs were found in his car which corresponded to those listed upon the inventory which the drug store maintained at the request of the federal government. It cannot be said, therefore, that the jury was compelled to rely solely on the alleged oral admissions in arriving at its verdict. The evidence in addition to those admissions was substantial, albeit circumstantial. Taking the whole into consideration, it cannot be said that the verdict was unwarranted. The motion for a judgment of acquittal was properly denied. The defendant's third assignment of error is without merit.

■ In an appendage to his brief, counsel for the defendant makes the following request:

> "The defendant in this case desires to raise the question of illegal search and seizure before the Court (which question was not raised at the time of trial), which is the reason for the submitting of Exhibit "B" to the Court, for such consideration as they deem appropriate."

We have read Exhibit "B" with care and are unable to discover how it or any other part of the record shows that any of the evidence which was admitted at

the trial was obtained pursuant to an illegal search. Since the clothing obtained at the defendant's residence was not offered at the trial, it is entirely irrelevant how it was obtained. It had no bearing on the verdict.

■ The search of the defendant's automobile was made as an incident of a lawful arrest. The officers testified that the defendant voluntarily admitted his guilt, and that he had been placed under arrest before he did so. It was subsequent to these developments that the automobile was searched. This was not an exploratory search undertaken to discover grounds for an arrest. It was an incident to a bona fide arrest, and as such was proper. *State v. Chinn*, 231 Or 259, 373 P2d 392 (1962). We conclude that the facts before us do not present an instance of illegal search and seizure. The judgment of the circuit court is affirmed.