# STATE v. EARL A. FISH.

159 N. W. (2d) 786.

April 26, 1968—No. 40,672.

*C. Paul Jones,* State Public Defender, and *Bruce D. Willis,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, *Robert W. Johnson,* County Attorney, and *G. D. Giancola,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction on a charge of burglary (Minn. St. 609.58) after jury trial. The information charged that defendant broke into Hunter's Inn, a bar and general store in rural Anoka County, in the early morning of February 28, 1966, and stole various articles of personal property. Reversal or a new trial is sought on the asserted grounds that the evidence used by the prosecution was the product of an unlawful search and seizure.

It appears from the record that one Donald Napier, a high school boy, was employed to do cleanup work at the Hunter's Inn. His duties brought him to the inn at 2:30 a. m. on the morning of the burglary. Entering the building from the front, Napier heard noises of loose coins and running footfalls and observed the shadows of two figures on the wall, indicating the presence of two people unlawfully on the premises. He immediately left the building and drove about 5 miles to the nearest telephone where he reported the facts to the sheriff's office.

At about the same time or shortly thereafter, two Anoka County deputy sheriffs were in the same area making a routine security patrol. They observed defendant's car leaving the Hunter's Inn parking lot. They knew the inn should not have been open for business after 1 a. m. and were curious as to the presence of defendant's automobile there. After following defendant's car for a few blocks, the officers stopped it and asked defendant to display his driver's license. When he could not produce one, the sheriffs detained him while a radio check was made to determine

his status as a licensed driver. Defendant and his passenger were asked to remain in the automobile until the license check was completed. In looking through the window of defendant's car, one of the officers noticed a bow and quiver similar to one he had seen on display in a window at Hunter's Inn. While the radio check was being made, the officers received a message from the Anoka County sheriff's office that a burglary might have been committed at Hunter's Inn. The officers then contacted the Blaine police squad by radio and requested that they report and stand by while they investigated.

In the meantime, the youth, Donald Napier, appeared on the scene on his return trip from making the report of the alleged burglary to the sheriff's office. He stopped to inform the sheriff's deputies of the burglary. The deputies then went to the inn and found that it had in fact been burglarized. They found that the west door had been forcibly opened. The cash register in the bar had been forced open and there was other damage to the premises. The deputies returned to the place on the road where defendant and his passenger had been detained and advised them of their constitutional rights. They then called the sheriff's investigators and, after their arrival, made a search of the automobile after placing defendant in the squad car. They found four bows, a quiver containing six arrows, a small black transistor radio, and a pair of binoculars, all of which it later developed had been stolen from the Hunter's Inn. The car also contained a claw hammer, a cold chisel, a wood chisel, a screwdriver, and two wrecking bars. It developed from the evidence that subsequent tests by the State Crime Bureau revealed that paint and fragments of wood found in a pocket of defendant's coat and on his glove matched material of a pool table which had been dismantled by the burglars. It would appear from the record that defendant was represented by competent counsel and no defense to the prosecution was interposed.

The issue presented for review is whether at the time defendant was stopped by the deputy sheriffs an arrest occurred so as to deprive defendant of his liberty. It is contended that an arrest without probable cause did in fact occur and, consequently, the search was unreasonable and the admission at trial of the evidence seized was a violation

of defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and under Minn. Const. art. 1, § 10. It is urged that denial of these asserted rights constitutes reversible error.

In support of his contention that the arrest occurred when defendant's car was stopped and that the arrest could not be made lawful by the subsequent discovery of stolen property in the car, defendant relies on Rios v. United States, 364 U. S. 253, 80 S. Ct. 1431, 4 L. ed. (2d) 1688; Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. ed. (2d) 134; and Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. ed. 436. The Henry case is illustrative of the point upon which defendant relies. In that case government agents stopped defendant in an automobile with stolen merchandise. Under the facts in that case, it would appear that the arrest occurred when the car was stopped. The government claimed that the arrest and incidental search were based on probable cause. It appeared, however, that the search was based on something less than probable cause, and the Supreme Court said (361 U. S. 103, 80 S. Ct. 171, 4 L. ed. [2d] 139): "When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." It is important to note, however, that in the Henry case the stop, arrest, and search were simultaneous events occurring in the absence of probable cause.

■ It is ordinarily true that an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of the officer. Minn. St. 629.32. It is also true that subject to certain exceptions enumerated in § 629.34 an arrest cannot be made without a warrant.[1] Since we must appraise the propriety of the search in light of the factual context of the record before us, it is important to observe that

---

[1] Minn. St. 629.34 provides in part: "A peace officer may, without warrant, arrest a person:

"(1) For a public offense committed or attempted in his presence;

"(2) When the person arrested has committed a felony, although not in his presence;

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; or

"(4) Upon a charge made upon reasonable cause of the commission of a felony by the person arrested."

we have by our decisions recognized that persons found under suspicious circumstances are not clothed with a right of privacy which prevents law-enforcement officers from inquiring as to their identity and actions. The essential needs of public safety permit police officers to use their faculties of observation and to act thereon within proper limits. It is not only the right but the duty of police officers to investigate suspicious behavior, both to prevent crime and to apprehend offenders. State ex rel. Branchaud v. Hedman, 269 Minn. 375, 130 N. W. (2d) 628, certiorari dismissed, 381 U. S. 907, 85 S. Ct. 1456, 14 L. ed. (2d) 289; State v. Clifford, 273 Minn. 249, 141 N. W. (2d) 124; State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115. See, also, United States v. Rabinowitz, 339 U. S. 56, 70 S. Ct. 430, 94 L. ed. 653; Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. ed. 1879. Of course, the right of police officers to stop a suspicious person does not extend to a right of search in the absence of probable cause.[2]

■ In light of the record before us, we should further note the authority given to police officers by virtue of § 171.08, which, so far as applicable here, provides:

"Every licensee shall have his license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand * * * by an officer authorized by law to enforce the laws relating to the operation of motor vehicles on public streets and highways * * *. The licensee shall also, upon request of any such officer, write his name in the presence of such officer in order that the identity of the licensee may be determined."

The constitutionality of this statutory provision is not questioned. Permission to operate a motor vehicle upon the public highways is not embraced within the term "civil rights," and a license to do so is not a contract or property right in any legal or constitutional sense but rather a mere license or privilege. 7 Am. Jur. (2d) Automobiles and Highway

---

[2] The reasonableness of the right of a delayed search of an accused's automobile without a warrant is discussed in two recent helpful law review articles. Comment, 52 Minn. L. Rev. 533; Abrams, *Constitutional Limitations on Detention for Investigation*, 52 Iowa L. Rev. 1093.

Traffic, § 97. It has even been held that police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license and that such a practice does not invade their right to use the public highways free from unreasonable and unwarranted interference. Nor does such a practice constitute an unlawful arrest or restraint or an illegal search contrary to the United States Constitution. 7 Am. Jur. (2d) Automobiles and Highway Traffic, § 98.

■ Accordingly, the issue presented brings into focus the question of whether constitutional protections are necessarily violated where a warrantless search on probable cause is made following detention for the purpose of determining identity. There is an extremely thin line of distinction between detention and arrest. There are exceptions to the requirement of a search warrant in situations involving motor vehicles. Recognizing that a vehicle can be quickly moved from the locality or jurisdiction in which a warrant must be sought, courts have held that where an arresting officer has probable cause to believe that a vehicle is carrying contraband or illegal property he need not obtain a search warrant. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. ed. 543; Scher v. United States, 305 U. S. 251, 59 S. Ct. 174, 83 L. ed. 151; Brinegar v. United States, *supra*; State v. Clifford, *supra*. Warrantless searches incident to arrest have been justified to afford police a method of self-protection, to prevent the escape of the suspect, and to prevent the possible destruction of evidence. Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777; United States v. Rabinowitz, *supra*. The assumption that all searches conducted without a proper search warrant and not falling within the common-law exceptions are unreasonable and therefore prohibited was rejected in the Rabinowitz case. That decision notes that "[t]he Constitution does not define what are 'unreasonable' searches" and that "[t]he recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case." 339 U. S. 63, 70 S. Ct. 434, 94 L. ed. 659. See, State ex rel. Branchaud v. Hedman, *supra*. The question of what may constitute such probable cause as to give validity to an arrest in a particular case has been the subject of numerous decisions by this court as well as the Supreme Court of the United States. Many of these authori-

ties are gathered and discussed in State v. Sorenson, *supra,* and require no further comment here except to observe that probable cause for arrest exists where there is a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. Probable cause is concerned with probabilities and is something more than mere suspicion and something less than evidence which would sustain a conviction. The United States Supreme Court in Henry v. United States, 361 U. S. 98, 102, 80 S. Ct. 168, 171, 4 L. ed. (2d) 134, 138, put it this way:

"* * * Probable cause [justifying an arrest without a warrant] exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed."

As we have heretofore indicated, the facts in this case differ from those in Henry v. United States, *supra,* in that the stopping, detaining, and arrest of the defendant did not occur simultaneously. The state does not contend that when the deputy sheriffs saw defendant drive his automobile from a business premises at the unlikely hour of 2:30 a. m., long after required closing time, that fact alone gave rise to probable cause that a felony had been committed. We agree with the state, however, that that circumstance was sufficient to give rise to an honest curiosity as to the identity of the parties they observed. The officers were within their rights to inquire as to their identity and actions. As competent police officers, it was within the scope of their duties to make such inquiry. We do not understand from our authorities or from the decisions of the United States Supreme Court that when the police exercised their right to make such an inquiry an arrest occurred. The probable cause which gave rise to the arrest and search which followed arose from a sequence of events which occurred while the police were properly in the exercise of their duties. While they were making inquiry as to the identity of defendant and his status as a licensed operator of a motor vehicle, they received a radio communication that the premises from which defendant was seen leaving had perhaps been burglarized, and, during the same interval, this information was confirmed by the youth who had reported the fact to the sheriff's office. By looking into the car, the officers ob-

served merchandise of a similar description to that which they had seen displayed on previous occasions at the Hunter's Inn. Thus, there was shortly an accumulation of circumstances which gave rise to probable cause to believe defendant was involved in the reported burglary. Moreover, the search disclosed the presence of articles in the automobile which it later developed had been taken from the burglarized premises. These included binoculars, a radio, and other telltale evidence of defendant's presence on the premises. We accordingly conclude that the arrest did not occur when defendant was first detained but that the factual circumstances which developed shortly thereafter established probable cause for arrest without a warrant.

There is so little merit in defendant's contention that the verdict is not supported by the record that that point does not warrant further examination.

Affirmed.