Argued January 7, affirmed June 18, petition for rehearing
denied July 23, 1969

## STATE OF OREGON, *Respondent, v.*
## LEONARD CLOMAN, *Appellant.*

456 P2d 67

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The sole issue is whether evidence introduced by the state was obtained by an illegal search and seizure.

Officers Daggett and Lindholm were motor patrolling in northeast Portland in the early morning. The police radio broadcasted the following information: At 4:00 a.m. that morning a truck had been observed backed up to a garage at a residence on NE Going Street, Portland; it was reported that tires were being unloaded into the garage.

Other officers investigated and observed a Cadillac four-door, bearing a certain license number, described

as light blue or light colored, parked next to a truck. Neither the Cadillac nor the truck had lights on and both vehicles drove away when a police vehicle approached. An officer stopped the Cadillac and the three occupants were identified as the defendant Cloman and two others, all known to the police as copper wire thieves. The Cadillac and its occupants were permitted to drive away. The officer who stopped the Cadillac then investigated the garage and found a large part of it was filled with rolls of copper wire. (Some of the rolls had paper wrapping and could be mistaken for new tires with paper wrapping, which probably accounted for the initial report that tires were being unloaded.) At least one roll was tagged "Hembree Electric Company." A photograph of the wire as it was piled in the garage at the time creates the strong inference that this wire did not come into this garage in a legitimate commercial transaction. These observations of the investigating officers were radioed to officers Daggett and Lindholm.

Shortly before 5:00 a.m. Officers Daggett and Lindholm saw a light-colored Cadillac about a mile from the Going Street address. It is uncertain whether the Cadillac stopped voluntarily or in response to some command of the officers. In any event, it stopped, Cloman got out and walked back toward the officers' car. Officer Daggett recognized Cloman and knew that he had a reputation as a copper wire thief. Officer Lindholm testified he believed the two men who had been reported with Cloman left the car and ran away during a period when the Cadillac had for a few moments vanished from the officers' observation.

The officers testified that the defendant was wearing overalls and was perspiring. According to the

officers, the defendant did not answer their inquiry about what he was doing in the area. He was arrested on an "after hours" charge and the trunk of the car was searched. Copper wire which was later found to be stolen was found in the trunk.

The car which the defendant was driving was a two-door, white 1959 Cadillac with a different license number than that reported on the car initially stopped on Going Street.

The defendant filed a motion to suppress the use of the wire found in the trunk as evidence. After an evidentiary hearing the trial court denied the motion. No findings of fact were made; however, the trial court stated that it was not basing its ruling upon any right of search which might stem from the "after hours" arrest.

We agree with the trial court that the "after hours" arrest cannot justify the search and seizure.[1] We agree also with the trial court that the search and seizure were proper.

The critical events must be examined in sequence to determine whether they provide a constitutional basis for the search.

The first critical event attacked by the defendant is Officers Daggett and Lindholm stopping Cloman. The contention of the defense is that the stopping was unlawful because the officers had no probable cause to believe that a crime had been committed by Cloman and, therefore, no probable cause to arrest Cloman.

We hold that the initial stopping of the car to

---

[1] State v. O'Neal, 251 Or 163, 444 P2d 951 (1968). City of Portland v. James, 251 Or 8, 444 P2d 554 (1968), held this "after hours" ordinance invalid.

determine the identity of the occupant and the vehicle was not an arrest and, therefore, probable cause to arrest was not a prerequisite to the stopping. We further hold that the police can stop a car to determine the identity of the vehicle and its occupants if they have a reasonable suspicion that the car or its occupants have a connection with criminal activity.[2] This "reasonable suspicion" we deem to be of less quantum than probable cause to arrest. This stopping of a car upon reasonable suspicion does not provide a basis for an officer searching the trunk.

The distinction between the right to momentarily detain for investigation and the right to arrest upon probable cause was recognized in *Rios v. United States*, 364 US 253, 262, 80 S Ct 1431, 4 L Ed2d 1688 (1960). In that case the police had reasonable suspicion to stop a taxicab. Exactly how the cab was stopped and what occurred thereafter was in dispute; however, it is certain that narcotics were found in the course of these events. The court stated that no probable cause for arrest existed when the police stopped the cab; however, "the Government argues that the policemen approached the standing taxi only for the purpose of routine interrogation, and that they had no intent to detain the petitioner beyond the momentary requirements of such a mission. If the petitioner thereafter voluntarily revealed the package of narcotics to the officers' view, a lawful arrest could then have been supported by their reasonable cause to believe that a felony was being committed in their presence."

The *Rios* case is relied upon in *Wilson v. Porter*,

---

[2] We are not passing upon the right to stop and examine the driver's operating license or the right to stop at a general roadblock.

361 F2d 412 (9th Cir 1966). The police saw a suspicious car and they "turned on their red light to have appellee pull over. * * * One of the officers walked to the right hand side of the car, requested the passenger to get out, and asked for identification. As the passenger opened the car, the officer, standing outside the car, shone his flashlight into the car and saw what appeared to be a gun barrel protruding from under the seat." 361 F2d at 414. The court reasoned:

"We conclude that no right of the appellee was violated when the officers stopped the car and that the subsequent seizure of the evidence upon which he was convicted was justified as pursuant to a lawful arrest. While it is clear that at the time appellee's car was pulled over probable cause for an arrest did not exist, it is also clear that not every time an officer sounds his siren or flashes a light to flag down a vehicle has an arrest been made. The initial act of stopping appellee's car was not an arrest. Granting that the constitutional prohibition against unreasonable searches and seizures makes no distinction between informal detention without cause and formal arrest without cause, there is a difference between that 'cause' which will justify informal detention short of arrest and the probable cause standard required to justify that kind of custody traditionally denominated an arrest. Our concern here is what degree of cause will justify cursory, informal detention in circumstances which would not justify an arrest, and whether the officers met that standard in the particular circumstances of this case.

"We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations. Rios v. United States, 364 U.S. 253, 80 S. Ct. 1431, 4 L.Ed2d 1688 (1960); Busby v. United States, 296 F.2d 328 (9th Cir. 1961). A line between reasonable detention for

routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." 361 F2d at 414-415.

In *State v. Fish,* 280 Minn 163, 159 NW2d 786 (1968), the officers were suspicious of a car they observed. They stopped it and subsequently discovered stolen property in the car. The court approved the stopping of the car and commented:

"It is ordinarily true that an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of the officer. Minn. St. 629.32. It is also true that subject to certain exceptions enumerated in § 629.34 an arrest cannot be made without a warrant. Since we must appraise the propriety of the search in light of the factual context of the record before us, it is important to observe that we have by our decisions recognized that persons found under suspicious circumstances are not clothed with a right of privacy which prevents law-enforcement officers from inquiring as to their identity and actions. The essential needs of public safety permit police officers to use their faculties of observation and to act thereon within proper limits. It is not only the right but the duty of police officers to investigate suspicious behavior, both to prevent crime and to apprehend offenders. * * * [Citations]. Of course, the right of police officers to stop a suspicious person does not extend to a right of search in the absence of probable cause." 280 Minn at 166-167.

Followed in *State v. Valstad*, 282 Minn 301, 165 NW2d 19 (1969).

In *People v. King*, 270 Cal App2d 905, 76 Cal Rptr 145 (1969), the court stated:

"* * * Given the observation of Stewart running, after midnight, in an area notorious for muggings and robberies, temporary detention for investigation of the occupants of Romero's automobile was lawful, even though the circumstances did not initially give the officers probable cause to make an arrest. * * *" 76 Cal Rptr at 148.

Our approval of an officer's right to stop to investigate should not be interpreted as drastically broadening an officer's power to restrain persons when the officer has no probable cause to arrest. The officer must have reasonable grounds to stop the person or car and the right to stop does not necessarily create a right to search.

■ The officers in this case had reasonable suspicion to stop a light-colored Cadillac. They knew a light-colored 1959 Cadillac had been observed stopped where a truck was backed up to the garage of a residence at 4:00 a.m. unloading something and that large quantities of copper wire which appeared to be stolen had been found in such garage immediately thereafter and some men who had reputations as copper wire thieves were in the Cadillac. At 5:00 a.m., about an hour after the first report, they observed a light-colored 1959 Cadillac about a mile from the place where the wire was found.

We do not believe it is material that the Cadillac observed on Going Street was described as a four-door rather than a two-door car, as light blue rather than light, and perhaps was described as having a different license number than that of the car stopped.

The possibility of error in observation or transmission is sufficient to cause us to withhold demanding exactitude of investigating officers. In *Bailey v. United States*, 128 US App DC 354, 389 F2d 305 (1967), the car was described as a 1953 Chevrolet with three men inside and the car stopped was a 1954 Chevrolet with four men inside; however, a majority of the court held there was probable cause to stop and arrest the occupants of the car.

■ When Officers Daggett and Lindholm identified Cloman as the occupant of the car they stopped, they had probable cause to arrest the defendant. The officers had information from which to form a reasonable belief that the crime of stealing copper wire had been committed, and that Cloman had committed a crime in connection with the stealing or concealing of such wire. The wire had in fact been stolen.

■ The question of whether or not there is probable cause to arrest almost has to be decided on an ad hoc basis because of the tremendous number of fact combinations possible. There are, however, certain general rules that are applicable. One of these is that the arresting officer can take into consideration, among other facts, the known record of the suspect and his modus operandi.

Mr. Justice Rutledge discussed this in *Brinegar v. United States*, 338 US 160, 176-177, 69 S Ct 1302, 93 L Ed 1879 (1949):

"* * * No problem of searching the home or any other place of privacy was presented either in *Carroll* or here. Both cases involve freedom to use public highways in swiftly moving vehicles for dealing in contraband, and to be unmolested by investigation and search in these movements. In such a case the citizen who has given no good cause for believing he is engaged in that sort of activity is

entitled to proceed on his way without interference. But one who recently and repeatedly has given substantial ground for believing that he is engaging in the forbidden transportation in the area of his usual operations has no such immunity, if the officer who intercepts him in that region knows that fact at the time he makes the interception and the circumstances under which it is made are not such as to indicate the suspect is going about legitimate affairs."

In *Beck v. Ohio*, 379 US 89, 97, 85 S Ct 223, 13 L Ed2d 142 (1964), the Court found there was no probable cause to arrest; however, it held that the suspect's past record was a relevant circumstance in determining whether there was probable cause:

"* * * We do not hold that the officer's knowledge of the petitioner's physical appearance and previous record was either inadmissible or entirely irrelevant upon the issue of probable cause. See *Brinegar v. United States*, 338 U. S. 160, 172-174. But to hold that knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will."

*State v. Sorenson*, 270 Minn 186, 134 NW2d 115 (1965), well illustrates the substantial consideration that the police are entitled to give a suspect's known record and mode of criminal activity. A woman had been robbed in her apartment and the burglar attempted to rape her. The officers suspected and had recently arrested the defendant on several occasions for similar type conduct. About seven or more years before he had been convicted three times of similar crimes. The victim in this case gave a general description that fitted the defendant. The description alone would not have afforded the police probable cause to arrest.

The court posed the question:

"The principal issue on this appeal is whether Detective Johnson under the direction of Captain Mahnke, on the basis of their knowledge and experience gained as officers of the burglary division and their knowledge relative to the defendant's known criminal proclivities, gained through investigation of prior similar burglaries, had probable cause to arrest defendant without a warrant for the commission of the burglary occurring April 28, 1962." 270 Minn at 194-195.

The court held such knowledge did provide probable cause.

█ The question arises whether it is material that the officers had probable cause to arrest defendant for the commission of a crime in connection with the stolen copper wire. The officers' expressed cause for arresting the defendant was a violation of an "after hours" city ordinance. We believe it reasonable to conclude that the officers gave this cause for arrest because of their uncertainty of the law of probable cause for arrest. We also believe it reasonable to conclude that the actual cause for which the officers arrested Cloman was some charge concerning the stolen wire. Under these circumstances, we find nothing to be served by holding the arrest invalid because the officers were uncertain about a problem which puzzles the courts. We hold that if the officers had probable cause to arrest, the arrest made is not rendered illegal because the officers expressed another and improper cause for arrest.

The recent decision in *People v. Chimel,* 68 Cal2d 436, 67 Cal Rptr 421, 439 P2d 333-337, cert granted 393 US 958, 89 S Ct 404, 21 L Ed2d 372 (1968), is closely in point. The officers secured a warrant for arrest upon a charge of burglary of old coins, arrested

the defendant at his home, and searched the defendant's entire home. The complaints supporting the arrest warrants were found insufficient; therefore, the court held the warrants could not support a legal arrest. The court upheld the arrest and consequent search, however, as an arrest based upon probable cause. The court stated: "The legality of an arrest, however, cannot depend exclusively upon the validity of the warrant pursuant to which the arrest is executed since an arrest without a warrant may stand if based on probable cause." 439 P2d at 335.

 The arrest for some charge concerning the stolen wire being legal, the officers had the right to make a search incident to arrest. A search incident to an arrest is authorized "to enable enforcement officers to gather the fruits of the crime, the implements thereof, and possibly to prevent the destruction of evidence thereof." *State v. Chinn,* 231 Or 259, 267, 373 P2d 392 (1962). A search incident to an arrest "must be reasonably related to the offense which prompts the arrest." *State v. O'Neal,* 251 Or 163, 444 P2d 951, 953 (1968), quoting *State v. Krogness,* 238 Or 135, 144, 388 P2d 120, cert den 377 US 992, 84 S Ct 1919, 12 L Ed2d 1045 (1964).

We have not held that a search incident to an arrest can only be made when there is probable cause to believe that the fruits or implements of the crime are in the place to be searched and neither has the Supreme Court of the United States. That Court appears to have adopted the same standard we expressed in *State v. O'Neal,* supra (251 Or 163). In *Harris v. United States,* 331 US 145, 67 S Ct 1098, 91 L Ed 1399 (1947), the Court stated:

"* * * The Circuit Court of Appeals found and the District Court acted on the assumption

that the agents conducted their search in good faith for the purpose of discovering the objects specified. That determination is supported by the record. The two canceled checks were stolen from the offices of the Mudge Oil Company. There was evidence connecting petitioner with that theft. The search which followed the arrest was appropriate for the discovery of such objects. Nothing in the agents' conduct was inconsistent with their declared purpose." 331 US at 153.

In *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L Ed 653 (1950), the defendant was arrested pursuant to a warrant. He was charged with selling and having in his possession forged government stamps. He was arrested in his small one-room office. The Court approved, as a search incident to his arrest, a search of his desk, safe and file cabinets. There was no inference that there was probable cause to believe instruments of the crime were in these places.

In *Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed2d 668, rehr den 362 US 984, 80 S Ct 1056, 4 L Ed2d 1019 (1960), the defendant was arrested on an administrative warrant preliminary to his deportation. The arresting officers searched the hotel room in which defendant was arrested, the adjoining bathroom and all of defendant's belongings. The officers stated they were searching for evidence of "alienage." The officers did not claim to have probable cause to believe evidence of alienage was present. The Court approved the search.

In *State v. McKenzie,* 232 Or 633, 377 P2d 18 (1962), the defendant was arrested without a warrant for burglary. When arrested the defendant was near his car. The officers searched the car immediately after the arrest and found narcotics in the glove com-

partment. Probable cause to search was not mentioned in the opinion. We stated:

> "The search of the defendant's automobile was made as an incident of a lawful arrest. The officers testified that the defendant voluntarily admitted his guilt, and that he had been placed under arrest before he did so. It was subsequent to these developments that the automobile was searched. This was not an exploratory search undertaken to discover grounds for an arrest. It was an incident to a bona fide arrest, and as such was proper. State v. Chinn, 231 Or 259, 373 P2d 392 (1962). We conclude that the facts before us do not present an instance of illegal search and seizure. * * *" 232 Or at 643.

The safeguard against an unreasonable search is the requirement that the search "must be reasonably related to the offense which prompts the arrest." *State v. O'Neal*, supra (251 Or at 166). A search of a wallet or a car trunk has no relevancy to an arrest for an expired operator's license or to an arrest for exceeding the speed limit. *State v. O'Neal*, supra (251 Or at 166); *State v. Krogness*, supra (238 Or at 144). A search of a glove compartment is reasonably related to an arrest for burglary in which narcotics were stolen. *State v. McKenzie*, supra (232 Or 633). A search of the trunk of a car in which the defendant is arrested is reasonably related to an arrest for burglary or similar offense involving theft.

The searched person's privacy has already been partially invaded by the arrest; therefore, the search does not have the personal impact that it otherwise might have. To limit this impact, the right to search is limited in time and space. *State v. Chinn*, supra (231 Or 259). Frequently, the tools or fruits of the crime are discovered by a search of the person, car,

room, or office of the person arrested. For these reasons a lesser standard than probable cause,—the standard of relevancy between the search and the arrest—is sufficient.[⑨]

This case, in our opinion, is a stronger case for the state than *Cooper v. California*, 386 US 58, 87 S Ct 788, 17 L Ed2d 730, reh and modif den 386 US 988, 87 S Ct 1283, 18 L Ed2d 243 (1967). There, the defendant was arrested while he was driving or riding in a car. The charge was selling heroin. His car was impounded by the police and searched a week after the arrest. Incriminating evidence was found in the glove compartment. The Court upheld the search and seizure. The state did not contend the search was incident to arrest and the ground upon which the Court upheld the search is not entirely clear. The majority states, however: "Their subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, * * *." 386 US at 61.

Counsel for the state has urged that we uphold the search as one in which there was a probable cause for search, as distinguished from probable cause for arrest and then a search incident to arrest. That reasoning has some persuasion; however, it is not necessary to adopt it in this case as there was probable cause for arrest, an actual arrest, and a search made incident thereto.

Affirmed.

McAllister, J., concurring.

This case turns on the simple question of whether the events occurring in the vicinity of 13th Avenue

---

[⑨] This problem is discussed in LaFave, *Search and Seizure: The Course of True Law . . . Has Not . . . Run Smooth*, Ill Law Forum, 255, 290 (1966).

and Going Streets during the early morning hours of March 2, 1967, constituted probable cause to believe that a crime had been committed and that the defendant had participated in the commission of it. If the officers had probable cause to arrest Cloman they could, as an incident to the arrest, search his vehicle.

The existence of probable cause is demonstrated by a brief review of the facts. At about four o'clock in the morning of March second the Portland Police Department was informed by an anonymous telephone call that some tires were being unloaded from a truck into a garage attached to a house at 1311 NE Going Street. Police officers in the area were asked by radio to investigate and Officer Conner apparently was the first to arrive at the scene. As he approached he saw a truck and automobile parked near the garage. The car was a light blue or light-colored Cadillac sedan. Both vehicles were driven away as he approached. When the officer attempted to stop the car the driver of the truck drove in the center of the street between the police car and the pursued car in an apparent effort to obstruct the officer. When Officer Conner succeeded in stopping the car the driver of the truck parked it on the street and fled, apparently on foot. After stopping the car Officer Conner questioned the three occupants, one of whom was the defendant Leonard Cloman. Officer Conner gave the driver a citation for driving without a driver's license and for operating a vehicle without a valid registration and then allowed the car and the occupants to move on.

After questioning the occupants of the car Officer Conner returned to the garage at 1311 NE Going Street. Another officer had reached the garage by the time Conner returned and they discovered inside the

garage a substantial quantity of copper wire in rolls, estimated at the trial from 8,000 to 10,000 pounds of wire. A photograph of the inside of the garage admitted at the trial shows at least 50 spools, rolls, and coils of wire and many more rolls on the bottom of the pile which cannot be counted. Many of the rolls were wrapped in paper and there were at least three large wooden spools holding large amounts of insulated wire.

Cloman was arrested by Officers Daggett and Lindholm at about 4:40 o'clock, a.m. They had also responded to the four o'clock broadcast by going to the intersection of 13th and Going, but they saw no truck or anything to warrant investigation by them and had resumed their patrol. Later they acquired the following additional information about the incident at 13th and Going from a police broadcast—that a large quantity of copper wire had been found in the garage and that a light blue or light-colored Cadillac sedan which was stopped as it was leaving the scene was occupied by Samuel Brown, Thomas Handy, and Leonard Cloman. Office Daggett knew Cloman by sight and knew that he and the other two occupants of the car were known wire thieves.

Shortly after they received the foregoing supplemental information by police radio Officers Dagget and Lindholm saw a light-colored Cadillac sedan about a mile from the 13th and Going Street intersection. The officers stopped the car to see if the occupant was one of the men who had been stopped earlier in the morning in a light-colored Cadillac by Officer Conner at 13th and Going Streets.

The standard by which to test the existence of probable cause is well stated in *Draper v. United*

*States,* 358 US 307, 79 S Ct 329; 3 L ed 2d 327, 332, as follows:

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra (338 US at 175). Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed, Carroll v. United States, 267 US 132, 162, 69 L ed 543, 555, 45 S Ct 280, 39 ALR 790."

When Officer Daggett arrested Cloman he knew that a quantity of copper wire had been unloaded under cover of darkness into a private garage at 1311 NE Going Street; that Leonard Cloman, a known wire thief, was at the scene with two other known wire thieves and had attempted to leave as a police officer approached in a marked police vehicle. In my view Officer Daggett could reasonably conclude from the foregoing information that the wire found in the garage had been stolen and that Cloman had participated in the crime. Officer Daggett testified that he arrested Cloman because "he was connected with this large accumulation of wire." He testified further:

"Q. Officer Daggett, you testified that you didn't know that a crime had been committed at the time you searched the car, or the car was searched. Did you believe at that time that a crime had been committed?

"A. Well, in my opinion I felt reasonably sure that there no doubt in fact had been a crime.

"Q. What crime?

"A. Well, I would assume it would have been burglary with this large accumulation of wire, this new wire that this information was broadcast about."

As to the search, Officer Dagget also testified:

"If I might explain, your Honor, the search was not incidental as such to the arrest for after hours. We were searching the vehicle after having received this information regarding the wire and the subject seen leaving. That was the basis for the search."

Because I believe Officer Daggett had probable cause to arrest Cloman I join with the majority in affirming the judgment.