Argued December 17, 1976, affirmed January 31, reconsideration denied
March 16, petition for review denied May 17, 1977

STATE OF OREGON, *Respondent,*

*v.*

DEMORIS PENNINGTON, *Appellant.*

(No. C 76-02-02627, CA 6611)

559 P2d 915

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

This is an appeal by the defendant from his conviction of robbery in the first degree. He assigns as error the denial of his motion to suppress as evidence the fruits of a search of his vehicle. He also assigns as error the refusal of the trial court to allow him to file a late notice of intention to rely upon the defense of alibi.

At about 3:15 a.m. on December 8, 1975, the Portland police radio described two cars which were "acting suspicious and possibly casing" Rico's Pizza Parlor in southeast Portland. There had been a series of recent robberies of Rico's and other restaurants in southeast Portland, all at about 3 a.m., by armed black robbers, including among them a black female with short hair in her twenties accompanied by a black male.

Moments after the broadcast, Officer Nordlof observed a Cadillac with the same license number as described, going south on Southeast 52nd, away from the area of Rico's. It was driven by a short-haired black female in her twenties. As he stopped the Cadillac, a black male "slid up" into view in the passenger seat. The driver got out. She had no operator's license. She and the male identified themselves. A radio communication established that there were no outstanding warrants for either of them. The driver returned to her car.

Officer Mosier joined Nordlof at about this time. As the driver returned to the car, Officer Mosier saw her trying awkwardly to push something under the seat with her foot. He observed in plain view on the front seat a knotted nylon stocking. He knew that knotted nylon stockings were commonly used as masks in robberies and that nylon stockings and scarves had been used as masks in the recent robberies in the area of the arrest. There were also in plain view two scarves and two leather jackets. Mosier told Nordlof of his observations.

Meanwhile, Officer Peterson had gone immediately after the broadcast to Rico's where he obtained information from interviewing the people there. He then joined Officers Nordlof and Mosier.[1] Peterson learned at Rico's and told his colleagues that when the suspicious automobiles were at Rico's, one person had been seen walking down the alley with a nylon stocking over his head and another was seen lying on the front floorboards of one of the cars.

Officer Nordlof ordered the driver out of the car. As she got out, Nordlof observed that the armrest which had earlier been upright was now folded down. Lying on the seat next to the armrest where the driver's right side had been, was a small automatic .22 caliber pistol which was later found to be loaded. The passenger was ordered out and a search of the car began. The officers believed that the car and its occupants had been involved in robberies in the area, including possibly a robbery or planned robbery that evening. The purpose of the search was to find weapons and implements and fruits of such robberies.

There were found in various places about the passenger compartment the hitherto mentioned .22 caliber pistol, knotted nylon stockings and scarves, as well as two men's leather coats, a dark green leather hat, two pair of gloves and a loaded .45 caliber revolver. Behind the driver's visor there was found a man's wallet. When Officer Nordlof looked inside for identification he found that the wallet belonged to defendant. He also found a napkin folded about a hard object. He opened it and discovered a man's diamond ring and one loose diamond. All of these items were seized and the people were arrested.

---

[1] Nordlof and Peterson were not allowed to testify as to some information which Peterson learned at Rico's and communicated to Nordlof prior to the search because defense objections were sustained. No offer of proof was made. Therefore we are able to rely upon only part of that information of parallel relevance and competence which Officer Peterson learned and communicated to his colleagues and upon which they acted, to which objections were not sustained.

■ As in *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), there was reasonable suspicion that the occupants of the Cadillac were involved in criminal activity to justify an investigative stop. *See also State v. Valdez,* 27 Or App 329, 556 P2d 132 (1976). There is no attempt by the police to justify the transaction, as they might have, based on an arrest for the license violation or as a search for weapons. Instead, they disarmingly acknowledge that they searched the automobile because they believed that it and its occupants had been involved in at least one recent robbery.

■ The existence of probable cause or not must be evaluated objectively in light of all the facts known to the police at the time of the beginning of the search. The police knew that the people they had stopped generally resembled some of those who had committed a series of recent armed robberies of Rico's and other restaurants in the area at the same time of the morning, that their car was just observed apparently "casing" Rico's while one person in a knotted nylon stocking mask was walking in the alley and another was lying on the floorboards, that the passenger "slid up" into view, that they possessed a knotted nylon stocking and scarves such as had been used in the recent robberies, and that they were armed with at least one pistol. All of these facts constituted " 'circumstances sufficiently strong in themselves to warrant a cautious man in the belief,' " *State v. Keith,* 2 Or App 133, 142, 465 P2d 724, *rev den* (1970), and therefore gave the officers probable cause to believe, that a robbery-related crime had been committed by the people whom the police had stopped, using the car in which they were found. As in *Cloman,* it is not necessary that the police know certainly that a specific crime has been committed; it is sufficient that they have probable cause to believe that some robbery-type crime had recently been committed. Whether the search of the automobile is justified as a search incident to arrest, as in *Cloman,* or as a search of an instrumentality of a crime, as in *Keith,* there is a

[ 335 ]

sufficient basis for probable cause. The fruits of the search were therefore admissible in evidence and the order denying the motion to suppress was correctly entered.

Defendant specifically challenges that portion of the search resulting in the discovery of the diamond ring and loose diamond folded inside the napkin contained in the wallet behind the driver's visor, relying upon *State v. Keller,* 265 Or 622, 510 P2d 568 (1973). *Keller* dealt with a permissible intensity of an inventory search of a seized automobile, *State v. Valdez,* 27 Or App 329, 338, 556 P2d 132 (1976). This was not an inventory search. *Cloman* authorizes an intensity of search consistent with the nature of the crime with which the search is related. This being a search for the implements or fruits of a robbery, it was reasonable for the officer to look for identification within the wallet and, finding an unusually folded napkin in it, it was reasonable for him to look to see if there were a small object within it which might have been taken in a robbery. *Cf. State v. Williams,* 17 Or App 513, 522 P2d 1213 (1974). The ring and diamond were admissible.

Defendant next assigns as error the denial by the court of leave to file notice of intention to rely upon the defense of alibi which defendant sought to file immediately at the beginning of trial.

ORS 135.455(1), one element of the statutory scheme of reciprocal discovery in criminal cases, provides:

"If the defendant in a criminal action proposes to rely in any way on alibi evidence, he shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve

such notice, he shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise."

The last clause of the section allows the court to permit such evidence only in the exercise of its discretion upon the finding of "good cause" for such an untimely filing. In this case the trial court questioned defense counsel carefully as to the reasons for the delay and decided that good cause had not been shown. We review for abuse of discretion, *cf. State v. Wolfe,* 273 Or 518, 524, 542 P2d 482 (1975), and we do not find such abuse.

Affirmed.