**STATE of Minnesota, Respondent,**

v.

**Wilmer MARTIN, Appellant.**

No. 49291.

Supreme Court of Minnesota.

May 16, 1980.

C. Paul Jones, Public Defender, Gregory A. Gaut and Robert Streitz, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, David W. Larson, Asst. County Attys., Minneapolis, for respondent.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Defendant Martin appeals from a conviction in Hennepin County District Court of the third-degree murder of his landlord, Ralph Mayhood, for which he received a sentence of 0 to 25 years. Defendant and Charles Des Jarlais, another tenant, were charged with causing the death of Mayhood while committing an aggravated assault on him.[1] Defendant challenges the sufficiency of the evidence, the refusal of the trial court to grant a mistrial due to jury dead-

---

1. Des Jarlais pleaded guilty to first-degree manslaughter before defendant's trial.

lock, and the correctness of the first-degree manslaughter instruction given. Citing as error the trial court's denial of his motion to dismiss the felony murder charge where the underlying felony is aggravated assault, he urges this court to adopt the "merger doctrine." Because we find the evidence as to defendant's guilt insufficient to constitute proof beyond a reasonable doubt, we reverse.

■■■ 1. In order to convict defendant of third-degree murder under Minn.Stat. § 609.195(2) (1978),[2] the state must prove he unintentionally caused the death of Ralph Mayhood while committing an aggravated assault upon him or that he unintentionally aided another who did so.[3] This court's scope of review on appeal is limited to making a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt, was sufficient to permit the jurors to reach the conclusion which they did. *State v. Harrison,* 279 Minn. 310, 156 N.W.2d 763 (1968). The Fourteenth Amendment of the United States Constitution requires that the state prove every element of the offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

■■ The incident which caused Mayhood's death occurred on the evening of January 18, 1978, in the basement of the apartment building which Mayhood lived in and managed. On that evening defendant, Charles Des Jarlais, Evelyn White, and Leo Siss, all heavy-drinking tenants in the building, were drinking a quart of white port together in Siss' basement apartment. Siss, a handicapped man, was lying in bed throughout the incident. He had had four or five drinks before the others arrived. After the four of them had spent one-half hour drinking, talking, and watching television, White took Siss' billfold from his table drawer and removed five dollars from it. When Siss remonstrated from his bed, Des Jarlais hit him over the head with a metal pipe and gave him two black eyes and some cuts. Siss called Mayhood, who lived directly overhead, to come and help him. When Mayhood came down 15 minutes later, White had given the billfold back and only Des Jarlais was in the room with Siss. Mayhood led Des Jarlais into the hall, where a fight occurred. George Kimbrough, another tenant, coming down the stairs, saw Des Jarlais hit Mayhood in the face with a bottle. Siss saw Des Jarlais kick Mayhood in the face as he fell to the floor. Mayhood fell face-down in the hallway and never moved again. His death resulted from coronary artery disease precipitated by the altercation and injuries, which included a broken sternum and four broken ribs. Kimbrough saw defendant in the hallway with a pipe in his hands. He

2. Minn.Stat. § 609.195 (1978) provides in relevant part:
> Whoever, without intent to effect the death of any person, causes the death of another by either of the following means, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years:
> \* \* \* \* \* \*
> (2) Commits or attempts to commit a felony upon or affecting the person whose death was caused or another, \* \* \*.

3. Minn.Stat. 609.05 (1978) provides:
> Subdivision 1. A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.
> Subd. 2. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.
> Subd. 3. A person who intentionally aids, advises, hires, counsels, or conspires with or otherwise procures another to commit a crime and thereafter abandons his purpose and makes a reasonable effort to prevent the commission of the crime prior to its commission is not liable if the crime is thereafter committed.
> Subd. 4. A person liable under this section may be charged with and convicted of the crime although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

did not see defendant use the pipe, but he did see him lay it down behind him after Mayhood fell and kneel down next to Mayhood with his hands extended toward him. When the police, whom Kimbrough called immediately, came, they found Mayhood lying face-down in a pool of blood in the basement hallway, with defendant kneeling beside him.

It is clear from the evidence that Des Jarlais hit Mayhood over the head with a wine bottle and kicked him after he had fallen down and that Mayhood never moved after he fell. It is also clear that defendant was present in Siss' room drinking and in the hallway during the fight. What is less clear is defendant's participation in the assault. The evidence that was presented came from witnesses who were drinking heavily, were unable to fully observe the assault, or were uncertain at trial of their observations.

The most damaging evidence was that of Leo Siss, who testified that he saw defendant stomp on Mayhood's chest. Siss, who was confined to his bed, admitted that he could not see the entire assault from within his room and that his vision was impaired by two black eyes from Des Jarlais' earlier blows. Moreover, he had been drinking heavily, admitted to having lost his memory several times in the past due to drinking, and could not identify a photo of his own room at trial. When testifying before the grand jury, Siss stated that the defendant kicked Mayhood, but at trial he disavowed that testimony and insisted that all he saw the defendant do was step once on the victim's chest. Siss also made prior inconsistent statements about the incident to the police, which he claimed at trial were false.

George Kimbrough, who had apparently been drinking that evening, but not at the time of the incident, testified that he had seen a pipe in defendant's hands but had not seen defendant strike Mayhood with it. In prior statements, Kimbrough had said that the pipe was used and that the defendant had kicked Mayhood, but he testified at trial that those statements were false.

There was evidence that blood consistent with that of Mayhood was found up to an inch deep on the outside edge of the heel of defendant's right shoe and on the bottom of his right pants leg. The pathologist testified, however, that it was unlikely that Mayhood's wounds were caused by shoes like those of defendant. It is also uncontradicted that defendant was kneeling by Mayhood's body when it lay in a pool of blood.

Although defendant gave two inconsistent stories to the police several days after the incident, at neither time did he admit any involvement in the assault.

Evidence that defendant aided Des Jarlais in the attack on Mayhood is equally thin. He was present in the hallway and apparently did nothing to stop the beating, but we question the reasonableness of requiring a middle-aged alcoholic with a blood alcohol content between .38 and .42 percent to attempt to stop a vicious assault perpetrated by a much younger, larger, and undoubtedly stronger man. As a whole, the evidence presented is insufficient to sustain defendant's conviction for third-degree murder.

Because of our disposition of the case, we need not address defendant's other assignments of error.

Reversed, defendant discharged.