STATE of Minnesota, Respondent,

v.

Clifton LIGGONS, Appellant.

No. C8–83–1511.

Court of Appeals of Minnesota.

May 8, 1984.

Review Denied July 26, 1984.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Defendant, Clifton Liggons, was convicted by a jury of Murder in the Second Degree for an unintentional shotgun killing, and he appeals.

We affirm.

## FACTS

On October 2, 1981, at approximately 3:45 a.m., two Minneapolis police officers were called to investigate a complaint involving a noisy party at 15 North 15th Street. Upon the officers' arrival at that address, they were met by the defendant-appellant, Clifton Liggons, who stated that he would take care of the noise. One hour later the same officers answered a call reporting a shooting at a building just around the corner from 15 North 15th Street. While at that building they noticed that the Fire Department and an ambulance had arrived at a location nearby. The ambulance crew was standing over a man who was lying face down on the ground. The man was unconscious and appeared to have sustained a massive leg wound.

The officers followed bloody drag marks leading from the body down the sidewalk to 15 North 15th Street and up to the defendant's apartment. There the officers found the defendant standing in the hall, just outside his apartment. When the officers asked him what had happened, the defendant responded that a man had come running into his apartment and had collapsed, whereupon the defendant had dragged the man outside. Since there was no blood in the hall other than the drag marks leading from the defendant's apartment, the officers did not believe the defendant's story. When questioned, the de-

fendant stated that the apartment was his, and that the officers could go inside and look around. Inside, the officers found a large amount of blood, particularly on the kitchen floor. Rags and a mop in the kitchen sink were soaked in blood.

The defendant was patted down for weapons, and was later arrested by an officer from the Homicide Department, who was called to the scene. Police found two pellets of number 8 shot from a shotgun shell in appellant's apartment. Shot consistent with that from a shotgun shell was removed from the victim's body. At the police station, the defendant stated that he had "fucked up and dragged the man outside," that he knew he would have to go to prison "[b]ecause this is serious," and that the victim would identify him because he was "capable of hurting someone."

The victim, Larry Kinnie, was admitted to the medical center at 5 a.m. October 2, and died at 4:40 p.m. October 5, 1981.

## ISSUES

1. Was the admission of evidence obtained as a result of the warrantless arrest reversible error?

2. Was the evidence sufficient to support the verdict of Murder in the Second Degree?

3. Did the jury properly reject defendant's claim of self-defense?

4. Did the evidence reasonably support the lesser included offense of Manslaughter in the First Degree and not the offense of Murder in the Second Degree?

## ANALYSIS

I.

Probable cause to arrest.

 Probable cause for arrest exists where the facts of a situation would lead " 'a person of ordinary care and prudence [to] entertain an honest and strong suspicion' that the crime has been committed" and that the defendant committed it. *State v. Johnson*, 314 N.W.2d 229, 230 (Minn.

1982), quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978). It is "something more than mere suspicion and something less than evidence which would sustain a conviction." *State v. Fish*, 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968). Upon review, both parties argue that an appellate court is limited to determining whether a trial court's finding of probable cause is "clearly erroneous," citing the recent federal decision of *United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir. 1982). The Minnesota Supreme Court has indicated that a reviewing court "should not be overly technical, but should accept the officer's on-the-scene probable-cause assessment if reasonable men would under the same circumstances make the same determination." *State v. Compton*, 293 N.W.2d 372, 375 (Minn.1980). *State v. Cox*, 294 Minn. 252, 256, 200 N.W.2d 305, 308 (1972) states that each case must be decided on its own facts, "guided not by any magic formula but by the standard of reasonableness."

■ The defendant argues that the evidence in this case did not support a finding of probable cause to believe that the defendant injured the victim. Rather, the defendant claims, the officers only knew that the defendant lived in the apartment from which the drag marks led. The defendant cites *Ybarra v. Illinois*, 444 U.S. 85, 92, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) as authority for his argument that grounds for arrest do not exist merely because a person is present at the scene of a crime. *Ybarra*, however, involved a search of a public tavern, whereas in this instance the defendant had admitted that the apartment belonged to him. In addition, there were between nine and thirteen other persons present at the time of the defendant's arrest in *Ybarra*, whereas in the instant case the defendant was the sole person remaining at the scene of the crime. Further, the defendant's story that a man had simply run up, had collapsed, and had been dragged out was belied by the large quantity of blood throughout the defendant's apartment and the single path of blood outside the apartment.

In conjunction with the above argument, the defendant claims that the officers had no right to enter his apartment and view the evidence, since there were no exigent circumstances at the time. The defendant cites *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that, absent exigent circumstances, police officers may not execute a warrantless and forcible search of a person's home. *Payton* does not provide support for the defendant's position, however, since the *Payton* decision specifically concerned "entries into homes without the consent of any occupant." *Id.*, at 577, 100 S.Ct. at 1375. In the present situation, the defendant expressly gave the officers consent to enter his apartment.

The arrest here was legal, and all evidence obtained as a result of the arrest—including defendant's statements to the police—were admissible.

## II.

### Sufficiency of the evidence.

■ The defendant claims that the state failed to prove beyond a reasonable doubt that he was the person who shot the victim. In reviewing a claim by a defendant that the evidence submitted at trial was insufficient to form the basis for a conviction, an appellate court "cannot retry the facts but must take the view most favorable to the State and must assume that the jury believed the state's witnesses and disbelieved any contrary evidence." *State v. Caldwell*, 322 N.W.2d 574, 586 (Minn. 1982), *citing State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). A verdict may be based on the testimony of a single witness, and "identification testimony need not be positive and certain, but ... it is enough for a witness to testify that it is his opinion, belief, impression, or judgment that the defendant is the person he saw commit the crime." *State v. Burch*, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969), *citing, inter alia, State v. Sutton*, 272 Minn. 399, 138 N.W.2d 46 (1965).

■ Testimony submitted at trial indicated that the victim died as a result of a gunshot wound. Proof was submitted demonstrating that the weapon used was a shotgun, and that the shot was fired within a range of a short distance—probably within 12 feet. The angle of the wound suggested that the victim had been standing, and that the bullet had been fired straight into his thigh. Two shotgun pellets were found in the wall below a window, where the victim had been standing or sitting when shot.

Testimony by three witnesses indicated that the victim had been at the party in the defendant's apartment on the evening of the shooting and had argued with the defendant over payment for a plate of food. A picture of the victim and another man at the party that evening was found in the defendant's apartment, along with a coat and hat which looked similar to those in the picture. Analysts discovered a tiny dot of blood on one of the defendant's shoes, although that blood could have belonged either to the victim or to the defendant. In addition to the defendant's statement that the victim would identify him as the assailant, at trial one witness (Daniel Knight) positively stated that the defendant had shot the victim.

The defendant argues on appeal that the testimony of Daniel Knight could not be believed because Knight had been drinking all day, and his testimony differed from that of the other witnesses to the shooting. The defendant cites *State v. Martin*, 293 N.W.2d 54 (Minn.1980) as authority for his argument that a murder conviction cannot be based upon testimony of witnesses who had been drinking heavily at the time of the murder and who were unable to fully observe the assault or were uncertain at trial of their observations.

The facts of this case, however, are clearly distinct from those in *Martin*. In *Martin*, the only testimony that the defendant had assaulted the victim was offered by a handicapped man who was confined to his bed, who admitted that he could not see the entire assault from his room, and who also admitted that his vision was impaired by two black eyes from an earlier assault. The court noted: "Moreover, he had been drinking heavily, admitted to having lost his memory several times in the past due to drinking, and could not identify a photo of his own room at trial." *Id.*, at 56. Finally, that same witness had previously offered evidence inconsistent with his testimony at trial.

In the present case Knight testified that he had been drinking all day, but described himself as "not intoxicated." Although he could not identify a drawing of the defendant's apartment as the location of the shooting, he testified to events which other witnesses agreed had happened at the defendant's apartment, and another witness positively placed Knight at the apartment that evening. Knight testified that he was sitting in a chair by the window next to the victim and facing the defendant at the time of the incident. His testimony regarding the events leading to the shooting is clear, and he specifically identified the defendant as the person who had shot the victim.

A second witness, Tyrone Fisher, testified to the same events leading up to the incident. Although he did not know the defendant at the time and could not specifically identify him at trial, he had previously chosen the defendant's picture from a photo lineup. The defendant claims that Tyrone Fisher's testimony must be disbelieved because he was intoxicated, his eyesight was poor, and he stated that the man who shot the victim looked "different" than the defendant. However, at trial Fisher testified that he had been only "mildly" intoxicated because he liked to keep his drinking under control. Although his eyesight was described as bad, he had been sitting in a one-room apartment on the same couch as the defendant at the time of the incident. He thought that the defendant looked "different" because the man who shot the victim had been wearing a hat and glasses at the time.

Testimony by a third witness—Gretchen Lueck—definitely placed the other two witnesses at the defendant's apartment on the

evening of the shooting; however, she could not identify who had shot the victim.

We find that the evidence was sufficient to support the claim that the defendant shot the victim.

### III.

#### Self-defense.

■ The defendant was convicted of second-degree murder (felony murder) under Minn.Stat. § 609.19:

"Whoever does ... the following is guilty of murder in the second degree ...:

(2) Causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense ... with force or violence."

The defendant claims that the evidence was sufficient to establish that he had acted in self-defense, and that he is entitled to a reversal or a new trial. Three conditions must be present to excuse or justify the use of deadly force:

(1) The killing must have been done in the belief that it was necessary to avert death or grievous bodily harm.

(2) The judgment of the defendant as to the gravity of the peril to which he was exposed must have been reasonable under the circumstances.

(3) The defendant's election to kill must have been such as a reasonable man would have made in light of the danger to be apprehended.

*State v. Austin*, 332 N.W.2d 21, 24 (Minn. 1983), *citing State v. Boyce*, 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969) and *State v. Housley*, 322 N.W.2d 746, 750 (Minn. 1982). *See also* Minn.Stat. § 609.065 (1982).

■ As the state notes, there is some question whether the defense "raised" the issue of self-defense at trial. The defendant did not testify himself, nor did the defense present any witnesses on his behalf, choosing instead merely to cross-examine the state's witnesses. The defendant generally has the burden of raising a reasonable doubt that a reasonable person would have killed under the circumstances. *State v. Dodis*, 314 N.W.2d 233, 237 (Minn. 1982), *citing State v. Boyce*, 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). Where a defendant has raised the issue of self-defense, it is the burden of the state "to establish beyond a reasonable doubt that the killing was not justifiable." *State v. Austin*, 332 N.W.2d at 23. Although the state argues that the defense did not properly raise the issue of self-defense, that issue appears to have been raised and overcome by the state itself. The state cannot seriously argue that its burden of overcoming that doubt is any less where a reasonable doubt is created by witnesses for the state, rather than the defense.

Direct examination of Daniel Knight revealed that the victim had been jumping up and arguing with the defendant and others all evening, and at one point had pushed the defendant down. The defendant had told him to either sit down or get out, and had also told the victim that he would get his gun if the victim did not leave. When the defendant returned with his shotgun, Knight testified that the victim sat down, but then jumped up one more time and began to move towards the defendant. Further testimony indicated that the defendant shot the victim as soon as he jumped up.

Daniel Knight was the only witness whose testimony indicated that the defendant had possibly been provoked by the victim. Cross-examination of Knight by the defense did establish that the victim was the type who would not flash a weapon but would just start shooting or cutting; however, there was no evidence at trial that the defendant knew of this trait.

The two other witnesses who testified concerning the incident both indicated that the victim had not rushed towards the defendant immediately prior to the shooting. Tyrone Fisher concurred with Knight's story that the defendant was seated on the couch with the shotgun across his knees at the time of the incident, but Fisher stated that the victim was also seated when the

shooting occurred (a fact which is contradicted by expert testimony indicating that the shot went directly into the victim's thigh at a perpendicular angle). Gretchen Lueck testified that the victim was standing at the time he was shot, but appeared ready to sit down.

 In sum, there was no evidence of an attempt by the defendant to retreat, and no evidence that the victim carried a weapon, or that the defendant had reason to believe the victim would inflict upon him great bodily harm, knowing that he was holding a shotgun.

Each juror was given a complete copy of the court's instructions and they rejected this defense. This determination is supported by the evidence.

### IV.

#### Manslaughter in the First Degree.

 Minn.Stat. § 609.20(1) (1982) provides that a defendant may be convicted of Manslaughter in the First Degree if he "[i]ntentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under the circumstances." *State v. Boyce,* 284 Minn. 242, 254–255, 170 N.W.2d 104, 112–113 (1969) explains the difference between manslaughter and self-defense:

> "[H]ot blood" is not a complete excuse for the killing of another. It is an extenuating circumstance which the law considers in fixing the measure of the guilt and the consequent punishment * * * On the other hand, the justification or excuse which exonerates a defendant from all criminal responsibility depends, not on the state of his emotions at the time of the killing, but rather on the quality of his judgment with respect to the danger to be apprehended from others and the alternative methods by which the danger could have been avoided.

Where self-defense is alleged, a factfinder must determine that a reasonable man would have believed that it was necessary to kill. Manslaughter requires only that the conduct of another under the circumstances be such as would provoke a person of ordinary self-control under like circumstances. As stated by the *Boyce* court, "One could be provoked to passion which would prompt him to kill without being reasonably justified in choosing this method of averting danger in preference to other available courses which would have been preferred by an ordinarily reasonable person in a like situation." *Id.,* 170 N.W.2d at 113.

 Again, upon appeal, the evidence must be viewed in the light most favorable to the verdict when determining whether the jury could reasonably have found the defendant guilty of murder instead of manslaughter. *State v. Salas,* 306 N.W.2d 832, 837 (Minn.1981).

 In the present instance, following the argument between the defendant and the victim, the defendant left the apartment and returned with a gun. Evidence from witness Lueck indicates that a period of approximately 15 minutes had elapsed from the time the defendant left until the time he returned. After he returned, evidence by both Knight and Fisher demonstrates that the victim had settled down. The defendant sat with the gun across his knees and shot the victim either while he was stationary or upon his movement towards him. The jury was justified in concluding that a person of ordinary self-control would not have been provoked by the victim's subsequent movements.

#### DECISION

The jury verdict of guilty of Murder in the Second Degree is affirmed.