STATE of Minnesota, Respondent,

v.

Felix Ival CABRALES, Appellant.

No. C3–85–2067.

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Oct. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, Public Defender, Anne McDiarmid, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant was convicted of second degree felony murder, Minn.Stat. § 609.19(2), and attempted first degree murder, Minn. Stat. § 609.185, subd. 1 and § 609.17. He now claims the evidence was insufficient and that the trial court erred in an evidentiary ruling. We affirm.

## FACTS

On February 17, 1986, appellant and his friend Jose Padilla visited the house of Ramona Durades. Durades lived there with her ten year old son Iran, Bonafacio Pedroso, the murder victim, and Juan Ravelo, the victim of the attempted first degree murder. Appellant, Padilla, Durades, Pedroso, and Ravelo spent the day talking, drinking, and watching television. At about 8:00 p.m. appellant left the house to pick up his wife. Pedroso and Iran accompanied him. Before they left, however, appellant and Pedroso got in a fistfight. Iran ran into the house to tell the adults who came outside and broke up the fight. Appellant then ran towards his home, with Pedroso and Ravelo following. They apparently caught up to appellant in the parking lot of his apartment. A conversation ensued, appellant shot Pedroso through the heart, and attempted to shoot Ravelo. Police were called and they arrested appellant shortly thereafter.

A pretrial hearing was conducted concerning, among other things, appellant's request to present evidence that Ravelo assaulted another person with a knife six weeks after appellant was arrested. The court denied appellant's motion to present this evidence and the case went to trial.

About thirty witnesses were called at the trial. The key prosecution witnesses were the people present at Durades' house. The first to testify was Jose Padilla, appellant's lifelong friend. He testified that he was inside the house when Iran entered and told the adults about the fight. After hearing this, Padilla went outside and saw appellant and Pedroso fighting on the ground. Neither had any weapons. When the fight was broken up, appellant threatened to kill Pedroso, who in turn said he was going to look for a knife with which to kill appellant. The witness testified that appellant then ran away, with Pedroso and Ravelo following him. Padilla was not certain whether Pedroso and Ravelo had knives with them when they followed appellant. He heard gun shots shortly after

this, but he did not go to the scene of the crime.

The next person to testify was Ramona Durades. She too went outside and saw the two men fighting. She also heard appellant threaten Pedroso. She stated that appellant ran away, with Ravelo in pursuit, while she and Pedroso went inside. She testified that she and Pedroso then ran towards where they believed appellant was. She lost sight of the men. Before she arrived at appellant's apartment, she heard four shots. When she arrived at the scene, she saw appellant with a gun in his hand. Durades stated that she did not see Pedroso or Ravelo with a knife.

The next important witness was Juan Ravelo. He also heard appellant threaten to kill Pedroso. He stated that when appellant started running, he ran towards appellant's home. He testified that he did not have a knife with him and that he did not see Pedroso with a knife either. He lost sight of appellant, and when he finally saw appellant, appellant had a gun. He told appellant "Felix, I want to speak to you." Ravelo was uncertain exactly where Pedroso was at this time, but he thought Pedroso was running behind him and arrived at the scene as Ravelo said he wanted to speak to appellant. Without any warning, appellant began shooting. Ravelo ducked behind a car in the parking lot. Appellant walked around the car and said "I'm going to kill you." He pointed the gun at Ravelo and pulled the trigger twice, but the bullets did not discharge. Appellant then ran from the scene. Ravelo saw Pedroso lying on his back on the steps of the apartment, with a gunshot wound in his chest. At this time Ravelo saw a large knife, approximately twelve inches long, with a seven inch blade, lying next to Pedroso.

The remainder of the State's witnesses were people who lived in the area of the shooting, police officers, and medical examiners. These witnesses corroborated some of the earlier testimony, as many of them saw Ravelo crouched behind the car. Perhaps the most damaging of these witnesses was Dottie Lou Schwantz. She testified that she looked outside and saw three people standing. Two of them were about an arm's length from each other, but the one closest to the building was quite a ways in front of the other men. It appears this was Pedroso.

The remainder of the State's witnesses were police officers and medical examiners. The most enlightening of this testimony was from James Gag, a forensic scientist, and Dr. Michael McGee, the medical examiner for Ramsey County. After examining Pedroso and his clothes, these two witnesses testified that appellant did not shoot Pedroso from close range. When asked to estimate how far appellant was from Pedroso, they stated that he had to have been at least three feet away. Gag stated that the gun could have been fired from hundreds of feet away. Dr. McGee also testified that Pedroso's blood alcohol content was .145.

Appellant's defense rested almost entirely on his own testimony. He stated that when he, Pedroso and Iran went to his car, Pedroso had a glass of brandy with him. Appellant told Pedroso he could not bring the brandy in the car and Pedroso got mad, hit him, and knocked him down. Pedroso called him a queer and both Pedroso and Ravelo threatened him. He admitted threatening them in return. He stated that Ravelo then grabbed him and told Pedroso to get a knife to "cut up this queer." Appellant then broke away and ran home. He picked up his gun to protect himself and walked to his car to pick up his wife. He heard someone call his name and turned to see Pedroso and Ravelo running towards him. Ravelo said they should talk and appellant replied they should wait until tomorrow. Ravelo then said to Pedroso "let's cut him up," and they pulled out knives and came towards appellant. Pedroso was four to five feet from him and moving towards him when appellant fired six shots with a small pause between each shot. He testified "I understood that I had to fire because they were so close to me that I had to shoot or they would kill me."

The jury found appellant guilty of felony murder in the second degree and attempted murder in the first degree. He was sentenced to presumptive sentences of 127 months for the murder conviction and 122 months for the attempted murder conviction, with the sentences running concurrently. He appeals these convictions.

## ISSUES

1. Is the evidence sufficient to sustain appellant's convictions?

2. Did the trial court commit reversible error in preventing appellant, who was claiming self-defense, from questioning a victim about the victim's assault of another person that took place subsequent to the crime in this case?

## ANALYSIS

1. In reviewing the sufficiency of the evidence, we must determine whether the evidence, when viewed most favorably to support a finding of guilt, was sufficient to permit the jurors to reach the conclusion they did. *State v. Martin,* 293 N.W.2d 54, 55 (Minn.1980). The evidence must be viewed in the light most favorable to the State and we must assume the jury believed the State's witnesses and disbelieved any contrary evidence. *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981). Appellant contends that even with this limited scope of review, we should reverse the conviction because the State failed to prove that he did not act in self defense.

A person may use reasonable force in order to resist an offense being committed against that person. Minn.Stat. § 609.06 (3) (1984). A person may even intentionally take the life of another in order to resist or prevent an offense which the person reasonably believes exposes him to great bodily harm or death. Minn.Stat. § 609.065 (1984). Once the defendant raises the issue of justification, the State has the burden of proving beyond a reasonable doubt the absence of justification. *State v. Harvey,* 277 N.W.2d 344, 345 (Minn.1979).

In order to establish a defense of justification, three elements must be proven. First, the killing must have been done in the belief that it was necessary to avert death or grievous bodily harm. Second, the judgment of the defendant as to the gravity of the peril to which he was exposed must have been reasonable under the circumstances. Third, the defendant's election to kill must have been one that a reasonable person would have made in light of the danger to be apprehended. *State v. Boyce,* 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). Furthermore, the defendant has a duty to retreat and to avoid the danger if reasonably possible. *State v. Bland,* 337 N.W.2d 378 (Minn. 1983).

■ Given the limited scope of our review we cannot say that appellant was justified in shooting Pedroso. Although a large knife was found next to Pedroso, the jury could have concluded that Pedroso never threatened to use it on appellant. Appellant testified that Pedroso assaulted him, but no one corroborated this story. We must assume the jury disbelieved appellant's story. The jury could easily have believed Ravelo's story that appellant shot without warning after Ravelo stated that they needed to talk. The jury could also have reasonably concluded that Pedroso was quite a distance from appellant when appellant shot him. Once again, although appellant testified that Pedroso was four or five feet from him, the jury could have believed other testimony which placed Pedroso at a much greater distance away from appellant. Finally, the jury could have felt that, regardless of the distance, shooting Pedroso in the chest was unreasonable in light of the danger to appellant. At most, Pedroso had an intimidating looking knife, while appellant had a .38 special revolver. The jury could have felt that appellant should have merely showed Pedroso the gun, threatened him, or fired a warning shot.

■ The evidence overwhelmingly supports appellant's conviction for attempted

first degree murder. Ravelo and numerous eye witnesses testified that Ravelo ducked behind a car after appellant began shooting. Ravelo testified, and appellant did not deny, that appellant came around the car, pointed the gun at Ravelo, said "I'm going to kill you," and pulled the trigger of his gun twice. At this point, appellant was not defending himself, but was seeking revenge. This is clearly an attempted murder which cannot be justified as self defense. *See State v. Soine*, 348 N.W.2d 824, 826 (Minn.Ct.App.1984).

2. Appellant also contends that he was denied a fair trial because the trial court refused to allow him to question Ravelo concerning Ravelo's assault of another person six weeks after appellant was arrested. We disagree.

Evidence of a person's other crimes, wrongs, or acts is generally not admissible to prove the character of a person in order to show that he acted in conformity therewith. Minn.R.Evidence 404(b). Therefore, the evidence of Ravelo's assault is not admissible to show that he assaulted appellant. *See State v. Keaton*, 258 Minn. 359, 367, 104 N.W.2d 650, 656 (1960). When the defendant claims self defense, however, evidence of a victim's violent acts may be admissible to show the defendant reasonably feared bodily harm. *State v. Matthews*, 301 Minn. 133, 134, 221 N.W.2d 563, 564 (1974). Ravelo's violent act is not relevant to show appellant feared bodily harm because the act occurred six weeks after appellant was arrested so appellant was not aware of Ravelo's act when he attempted to shoot Ravelo. *See State v. Irby*, 368 N.W.2d 19, 23 (Minn.Ct.App. 1985). Therefore, the trial court did not err in preventing appellant from bringing in this evidence.

## DECISION

The evidence is sufficient and the trial court did not err in its evidentiary ruling.

Affirmed.