**STATE of Minnesota, Respondent,**

v.

**Craig Scott MORTLAND, Appellant.**

**No. C7–86–543.**

Court of Appeals of Minnesota.

Nov. 4, 1986.

Review Granted Dec. 23, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This appeal questions whether severe aggravating circumstances justified the imposition of a sentence trebling the presumptive sentences for criminal sexual assault of a six-year old girl and assault of a seven-year old boy, plus consecutive sentences for kidnapping convictions arising out of the same incident. Appellant also claims the police lacked probable cause for his arrest. We affirm but modify the sentence to twice the presumptive sentence for assault of the boy and to concurrent sentencing for the kidnapping convictions.

## FACTS

On July 2, 1985, six-year old S.S. and her seven-year old friend E.D. were eating noon lunch in a Richfield park. The park was within a few feet of E.D.'s home and just across the parking lot from the apartment where S.S. lived.

Appellant approached the children and persuaded them to join him in investigating a cloud of black smoke hanging over the park. As they walked towards the smoke, appellant forced S.S. into a wooded area while E.D. walked in a slightly different direction. When E.D. lost sight of his friend, he began calling S.S.'s name and came into the secluded area where appellant had taken her. E.D. found appellant making sexual advances towards S.S., and the boy began to scream and cry. Appellant produced a knife, held it to E.D.'s throat, and threatened to kill him if he did not remain quiet. Appellant also threatened to kill S.S. if E.D. disobeyed him. E.D. then complied with appellant's order to sit on the ground and to silently watch the events that followed.

Appellant then forced S.S. to remove her skirt and underpants. Appellant told S.S. he would kill her if she did not do as he told her. Appellant then forced his penis into S.S.'s mouth, choking her and breaking one of her front teeth in half in the process. He continued to force her to engage in oral sex until he ejaculated; he then forced her to swallow his semen.

By this time S.S. had blood and semen on herself and on her clothes. Appellant, however, did not stop but prolonged the assault by forcing S.S. to lie down and by penetrating her vagina. Immediately afterwards, appellant rolled S.S. over onto her stomach and penetrated her anally. Appellant continued holding the knife in his hand throughout the assault.

Appellant finally released S.S. He then ordered both children to stay where they were for five minutes. He also warned them that if they told anybody what he had done to them he would find out where they lived and would come back and kill them. Appellant then pulled his pants on and ran towards the park.

After they were left alone, E.D. waited only a few moments before running to his house, with S.S. following him. E.D., crying and panic stricken, told his mother about a bad man in the park who had a killer knife and was trying to kill him and S.S. E.D.'s mother found S.S. outside the house, scared, bloodied, and dirty. S.S. told E.D.'s mother what appellant had forced her to do and that he had broken one of her teeth with his penis.

E.D.'s parents called the police. Both children described their assailant as a white male about 23 years old, with blue eyes and short hair that stuck up all over, wearing blue jeans, a belt with a buckle, tennis shoes, and a T-shirt with a large eagle design on it. Both children also said they had seen the same man the day before near the same picnic table. He had asked them to come with him to his fort or tree house, but the children did not go with him. After describing the assailant to the police, S.S. was taken to the hospital for treatment.

A ten year old neighbor girl who lived in the apartment below S.S. told police she had seen a man outside the apartment building that morning at about 9:00. The man wore a black and white T-shirt, blue jeans, and tennis shoes, and he had short hair that stuck up all over.

One of the police officers had prior contact with a man matching the children's description while investigating other sexual assaults on young children. The officer knew the man's parents lived only one block from the park, and the police went to the house. Appellant answered their knock at the door wearing blue jeans and a belt with a large gold buckle, tennis shoes, and no shirt. His hair was short and stuck up all over. The police noticed a fresh stain on the front of his pants.

Appellant told police he got up around 12:30 and had not been out of the house. He agreed to accompany them to the apartment building, where the neighbor girl looked into the police car and identified appellant as the man she had seen that morning. The police then arrested appellant. After his arrest, appellant admitted he sexually assaulted S.S. in the park and had threatened both children. A jury convicted him of six counts of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(a), (c) (1984), two counts of kidnapping, Minn.Stat. § 609.25, subd. 1(2) and one count of assault in the second degree, Minn.Stat. § 609.222.

Following appellant's conviction, the trial court held a sentencing hearing. The physician who treated S.S. testified that a considerable amount of force was needed to fracture S.S.'s tooth. She also testified that both the vaginal and anal openings were bruised, and that the vaginal opening was unusually large. S.S. was also experiencing unusual vaginal pain.

S.S.'s mother described some of the changes in her daughter in the six months since the attack. S.S. has become far more security conscious at bedtime, requiring that a light be on and her bedroom door be left fully open. She refuses to play outside as she did before and only recently ven-

tured a few feet out into the front yard with some friends. S.S. must be escorted the short three block distance to school. In school, S.S. has developed a very short attention span and has problems with "acting out." She has asked to move from the school and the neighborhood. She continues to complain about hurting "inside" when she goes to the bathroom.

E.D.'s mother also testified about the effect of the assault on her son. E.D. is now extremely afraid of anyone he does not know. He refuses to sleep without a nightlight and is plagued by nightmares, sometimes as many as three or four crying spells in a single night. Often E.D. tries every excuse to avoid sleeping in his own bed, arguing to sleep with his parents. E.D. refuses to play in his own fenced back yard and will not enter the park without holding his parent's hand. E.D. will not play in a room alone. Like S.S., he has developed problems at school.

E.D. also expresses worries about becoming a missing child and is extremely security conscious when traveling, insisting on sitting on his mother's lap in the car. He has reverted during the day to wetting his pants, which had not been a problem for him since age three. He has developed a fascination with pocket knives, and refers to an army knife given as a gift to his stepfather as like "the killer knife that the bad man had in the park this summer."

A psychologist who had treated appellant before the attack outlined appellant's history of prior sexually aggressive incidents, saying there had been at least four such episodes before appellant was referred to him in August 1982. He testified that appellant's family background included incestuous sexual activity by his father on appellant's sister and a lack of parenting of appellant after he was approximately five years old. Appellant's mother's testimony corroborated the psychologist's description of the family. The psychologist was pessimistic about treating or rehabilitating appellant, concluding that he saw no choice other than to keep appellant locked up for a long time.

The trial court sentenced appellant to a total of 300 months (25 years) by triple durationally departing the sentences for criminal sexual conduct and assault, giving the presumptive sentence for each of the two kidnapping convictions, and ordering appellant to serve all the sentences consecutively.

## ISSUES

1. Did the trial court clearly err in finding that probable cause supported appellant's arrest?

2. Do severe aggravating circumstances justify a triple durational departure along with consecutive sentences for kidnapping?

## ANALYSIS

### I.

The trial court's finding that appellant's arrest was supported by probable cause will be reversed only if clearly erroneous. *State v. Liggons*, 348 N.W.2d 785, 788 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. July 26, 1984).

Probable cause for arrest exists where the facts of a situation would lead "'a person of ordinary care and prudence [to] entertain an honest and strong suspicion' that the crime has been committed" and that the defendant committed it. *State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982), quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978). It is "something more than mere suspicion and something less than evidence which would sustain a conviction." *State v. Fish*, 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968). * * * The Minnesota Supreme Court has indicated that a reviewing court "should not be overly technical, but should accept the officer's on-the-scene probable-cause assessment if reasonable [persons] would under the same circumstances make the same determination." *State v. Compton*, 293 N.W.2d 372, 375 (Minn.1980). *State v. Cox*, 294 Minn. 252, 256, 200 N.W.2d 305, 308 (1972) states that each case must be

decided on its own facts, "guided not by any magic formula but by the standard of reasonableness."

*Id.* at 787–88.

■ In ruling that there was probable cause, the trial court took note of the following facts: E.D. and S.S. gave the police parallel descriptions of their assailant. The neighbor girl's information about the man she saw outside the apartment building that morning matched that description. From these identifications, one of the police officers recognized appellant, who had been the subject of previous police investigations of sexual assaults on young children. When the police went to appellant's home, he answered the door wearing the same clothes described by the children, except he was not wearing a shirt. The police did not arrest appellant at that time, but asked him to accompany them to the apartment building. Only after the neighbor girl positively identified appellant as the man she had seen that morning and on previous occasions did the police arrest appellant.

These facts support a finding that the police had an "honest and strong suspicion" that appellant was the children's assailant. The trial court's ruling that there was probable cause for appellant's arrest is not clearly erroneous.

## II.

Appellant had a criminal history score of 2 at the time of his convictions. Criminal sexual conduct in the first degree is a severity level VIII defense; only one sentence for the sexual assault is allowed. Minn.Stat. § 609.035 (1984). Appellant, however, can be sentenced for the kidnapping along with the sexual assault and assault in the second degree. Minn.Stat. § 609.251 (1984).

■ The presumptive sentence for the sexual assault of S.S. is 65 months. The presumptive sentence for the assault on E.D. is 21 months, based on a severity level VI offense and a criminal history of zero. Minnesota Sentencing Guidelines II.F. (zero

must be used when sentencing consecutively). The trial court's choice to run these two sentences consecutively is not a departure. *Id.* The trial court also tripled the presumptive sentences on both assault convictions. In addition, the trial court sentenced appellant to two consecutive 21 month sentences for kidnapping S.S. and E.D.

■ Departures from presumptive sentences must be justified by substantial and compelling circumstances. *Id.*, I.4, II.D. Appellant first argues the facts do not justify more than a double departure for either the sexual assault of S.S. or the assault on E.D. In *State v. Evans*, 311 N.W.2d 481 (Minn.1981) the supreme court stated:

[G]enerally in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length. * * * [W]e cannot state that this is an absolute upper limit on the scope of departure because there may well be rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified.

*Id.* at 483 (emphasis omitted).

■ The trial court must find "severe aggravating circumstances" to justify a greater than double departure. *State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982).

The trial court referred to six separate factors as grounds supporting a triple departure on the sexual assault conviction:

(a) Particular vulnerability of a six-year old victim. *See State v. Cermak*, 344 N.W.2d 833, 839 (Minn.1984); *State v. Partlow*, 321 N.W.2d 886, 887 n. 1 (Minn. 1982).

(b) More than one form of sexual penetration. *See State v. Van Gorden*, 326 N.W.2d 633, 635 (Minn.1982).

(c) Particular cruelty to the victim as evidenced by physical injuries, especially the breaking of the victim's tooth during the act of oral penetration. *See State v. Herberg*, 324 N.W.2d 346, 350 (Minn.1982).

(d) Use of threats of death to coerce the victim's submission and silence. *See Norton,* 328 N.W.2d at 146.

(e) Invasion of the victim's zone of privacy by snatching her from a picnic table a short distance from her apartment building. *See Van Gorden,* 326 N.W.2d at 635.

(f) Psychological damage to the victim. *See Kilcoyne v. State,* 344 N.W.2d 394, 397–98 (Minn.1984). The trial court noted in this regard "[W]e still won't know what the long-term effect of this vicious sexual assault on her will be when she is an adult. I find that to be as damaging as any type of physical injuries that you may have perpetrated on her."

■ The validity of the reasons articulated by the court as grounds for departure is well documented by the cases cited next to each factor. Together, the reasons constitute severe aggravating circumstances justifying more than a double durational departure. In particular, the vulnerability of S.S. and the likelihood of permanent psychological damage as a result of appellant's assault on her are significant considerations.

■ Appellant argues that the offense charged already takes into account vulnerability due to a victim's age, i.e., under 13 years old, such that under ordinary circumstances S.S.'s age could not be again relied upon for a departure factor. The cited prohibition is not violated in the case of the extreme vulnerability of a six-year old victim, one who is too young to have any defenses but too old to escape knowing and remembering for the rest of her life the trauma and pain inflicted upon her. *See Partlow,* 321 N.W.2d at 887, n. 1; *see also Norton,* 328 N.W.2d at 147 (that 5–year old victim was more aware of what was happening to her than the 2½–year old victim in *Partlow,* where triple departure was not upheld, was factor justifying triple departure).

Cases evaluating triple durational departures have frequently focused on evidence of permanent injury to the victim. *See e.g., Van Gorden,* 326 N.W.2d at 635 (although departure justified by totality of circumstances, particular significance is attached to fact of permanent injury); *Partlow,* 321 N.W.2d at 887 (absence of permanent injury to 2½–year old victim influenced conclusion that aggravation of presumptive sentence should stay within doubling limitation expressed in *Evans* ). Here, the evidence indicated S.S. was still experiencing pain upon urination more than six months after the attack. Even more critically, there is also substantial evidence of permanent psychological damage. As S.S. matures, she will be forced to grapple with this episode again and again.

■ Appellant also argues that the trial court improperly concluded that the picnic table from which appellant took S.S. and E.D. was within their zone of privacy. The table was within feet of E.D.'s home and within sight of S.S.'s apartment located just across the parking lot from the park. In *Van Gorden,* where the defendant broke into the victim's home, the supreme court held that

[a]s a result, the victim has to contend psychologically not only with the fact that she was sexually assaulted in a brutal way but also with the fact that her home is no longer the island of security that she perhaps thought it was.

*Van Gorden,* 326 N.W.2d at 635.

A child's "island of security" is not necessarily limited to the walls of their house. That the children were eating lunch in the park without supervision indicates they felt safe so long as they were next to their homes. Their parents' testimony that S.S. has to be escorted to school only three blocks away and that E.D. refuses to go play in his own back yard or go to the park without a parent indicates appellant invaded their previously safe zone of privacy and that they have been unable to recover their sense of security about their close surroundings.

Certainly, appellant could have hurt S.S. more seriously and thereby would have revealed an ultimate level of cruelty. At some level of inhumanity, however, subtle distinctions between degrees of depravity

are impossible to entertain. Appellant's behavior, particularly his cruelty in forcing S.S. to engage in oral sex, breaking her tooth, and forcing her to swallow his semen, evidences a heinousness that prevents us from engaging in further comparative analysis. The evidence supports a finding that severe aggravating circumstances justify a tripling of the presumptive sentence for the sexual assault of S.S.

In justifying a triple departure for the assault against E.D., the court noted the vulnerability of E.D. due to his age, the particular cruelty in brandishing a knife against the victim's throat, the threats to kill him, the trauma of being forced to observe his young friend being sexually assaulted, the use of threats to silence his screams, the invasion of the child's zone of privacy, and the psychological damage to the victim.

■ Without minimizing what was done here, a departure more than double the presumptive sentence for the assault on E.D. would be disproportionate to the crime committed. E.D. was not physically injured. The threatened use of the knife against E.D. was essentially an element of the offense. *See* Minn.Stat. § 609.222 (Supp.1985); *State v. Rogers,* 347 N.W.2d 551, 552–53 (Minn.Ct.App.1984). The other factors do not indicate that severe aggravating circumstances are present such that this is a rare case compelling a greater than double departure. However, as appellant seems to concede, the crime was committed under aggravating circumstances such that a double durational departure is proper.

■ Appellant also contends the imposition of consecutive kidnapping sentences is a departure that is not justified by the facts. This is true. The use of consecutive sentencing for the kidnapping convictions constitutes a departure. Minnesota Sentencing Guidelines II.F.; *see State v. Wellman,* 341 N.W.2d 561, 566 (Minn.1983). The trial court stated the dispositional departure was justified by the particular cruelty, the threats of death and the use of physical violence to effect the restraint of

the children, and the additional humiliation and terror that appellant put both of the children through while committing the sexual assault. These are the same general factors considered by the court to justify its durational departure.

In *Wellman,* the supreme court acknowledged that the sentencing guidelines "do not explicitly state that the sentencing court cannot use one set of aggravating circumstances as justification for departing both durationally and with respect to consecutive service." *Id.* at 566. However, the court held that the general limitations on the scope of departures, as expressed in *Evans,* would be violated if a court uses the same aggravating circumstances to justify an additional departure with respect to consecutive service, over and above the durational departure. *Id.* The trial court in *Wellman* used consecutive sentencing for three offenses and tripled the presumptive sentence for the third offense. The supreme court upheld the use of both a durational and a dispositional departure because the presence of severe aggravating circumstances warranted an exception to the *Evans* limitation. *Id.*

■ In the present case, severe aggravating circumstances justify a triple departure from the presumptive sentence for the sexual assault of S.S. and aggravating circumstances justify a double departure from the presumptive sentence for the assault of E.D. However, unlike *Wellman,* which involved not only severe aggravating circumstances at the time of the assaults but also the cumulative effect of an ongoing day-to-day reign of fear by the assailant, who lived with the child victim's family, the facts here do not justify the use of the same aggravating circumstances to impose consecutive sentencing for the kidnapping convictions. *See also State v. Gissendanner,* 343 N.W.2d 668, 669 (Minn.1984) (under *Wellman,* consecutive sentencing in addition to doubling of the more severe presumptive sentence violated the general limitations on the scope of departure).

## DECISION

The trial court did not err in finding that probable cause supported appellant's arrest. Appellant's sentence is modified as follows: a triple durational departure is allowed for the sexual assault of S.S. (65 × 3 = 195), consecutive to a double departure for the second degree assault of E.D. (21 × 2 = 42), for a total of 237 months, concurrent with two 21–month kidnapping sentences.

Affirmed as modified.